IN THE UNITED STATES DISTRICT COURT FOR THE

WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| BARAN TELECOM, INC., ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> THE TRAVELERS COMPANIES, INC., ) <br> f/k/a THE ST. PAUL TRAVELERS ) <br> COMPANIES, INC.; ST. PAUL SURPLUS ) <br> LINES INSURANCE CO.; and THE ) <br> TRAVELERS INDEMNITY COMPANY, ) <br> ) <br> Defendants. ) | Case No. CIV-09-1271-L |

## **O R D E R**

On October 23, 2009, plaintiff Baran Telecom, Inc. sued defendants The Travelers Companies, Inc., f/k/a The St. Paul Travelers Companies, Inc., St. Paul Surplus Lines Insurance Co., and The Travelers Indemnity Company (collectively "defendants") in state court asserting claims for (1) "bad faith", *i.e.*, breach of the duty of good faith and fair dealing in connection with a contract of insurance, (2) fraud, and (3) breach of contract and breach of implied contracts. Defendants subsequently removed the state court action to this court.

Plaintiff's state court Petition, which is attached to the Notice of Removal [*see* Doc. No. 1-3] ("Petition"), alleges that the parties entered into certain contracts of insurance, including a 2003 retrospective premium agreement ("the 2003 Agreement") which obligated plaintiff to pay up to approximately $500,000

of the defense cost and settlement money paid on a single claim.  Petition, ¶¶ 7-10.[1]  The Petition alleges that Ray and Karen Hull sued plaintiff in state court after a November 25, 2003 incident in which Mr. Hull was injured after he fell during the construction of a cell phone tower due to his own negligence.  Plaintiff was the general contractor on the cell phone tower construction project.  Id., ¶¶ 12-14.  The Travelers Indemnity Company assumed the defense and retained insurance defense counsel to represent plaintiff in the Hull lawsuit.  Id., ¶¶15-16.  Based upon findings from OSHA and it own expert as well as reports from its insurance defense counsel, plaintiff "vehemently denied" responsibility for Mr. Hull's damages and objected to mediation or settlement of the Hull case.  Travelers claimed that it had carte blanche authority to settle the case over plaintiff's objection.  Id., ¶¶ 17-22.

Plaintiff's insurance defense counsel sent plaintiff a letter on October 15, 2007,[2] saying that: "As we have previously advised [plaintiff], as well as Travelers, we cannot and will not get involved in this coverage disagreement." "We were retained to represent [plaintiff] in this case and that is exactly what we have done and will continue to do." "As our client, we will follow your directions and will not attend or participate in any manner in the scheduled mediation." Id.,

---

[1] Defendants are in accord that the 2003 Agreement includes a $500,000 retention "whereby the Plaintiff is obligated to reimburse Travelers for general liability losses, including for defense costs and indemnity payments paid by Travelers on a single claim." Defendants' Brief in Support of Motion to Dismiss, Doc. No. 5, p. 3.

[2] The Petition gives the date of the letter as October 15, 2009, a typographical error.

2

¶ 23. When plaintiff said it did not want to participate in the mediation, its insurance defense counsel and Travelers "warned of possible denial of coverage." Id., ¶ 24. "Under threat of complete denial of coverage and duress," plaintiff attended the unsuccessful mediation. During the pre-trial conference, Travelers directed plaintiff's insurance defense counsel to approach Hull and make an additional settlement offer. The Petition alleges that at no time during the pre-trial conference or until Hull accepted the settlement offer did the defendants or plaintiff's insurance defense counsel notify plaintiff that negotiations had resumed or that a settlement offer was made in the case. Id., ¶¶ 25-26. On October 24, 2007, the Hull case was settled for the policy limits of $1,000,000, without plaintiff's knowledge or consent. Id., ¶ 27.

Plaintiff alleges: "This settlement was done despite [plaintiff's] previously stated objection, the ongoing coverage dispute and with knowledge that Travelers could arguably require [plaintiff] to pay a total of $500,000." Id., ¶ 28. Plaintiff alleges that defendants did not allow it to assume the defense of the claim, made material misrepresentations about the rights and liabilities of the parties, substituted its judgment for the insured and unilaterally settled the case to plaintiff's detriment. Id., ¶¶ 30-34.

Plaintiff's prayer for relief recites that plaintiff seeks as damages: (a) payment and reimbursement for all contractual benefits for all coverage afforded to plaintiff under the aforementioned policies, with interest on all amounts due; (b)

disgorgement of the increased financial benefits derived by any and/or all of the defendants as a direct result of the conduct causing injury and damages to plaintiff; (d) [sic] an order enjoining defendants selling insurance policies using deceptive and misleading marketing practices; (e) a declaratory judgment specifying that defendants are not due any money related to the policies mentioned herein; (f) actual and punitive damages in an amount in excess of $10,000.00; and (g) prejudgment interests, costs and a reasonable attorney's fee and any and other equitable relief the court deems appropriate.

Shortly after removal, defendants filed Motion to Dismiss, or Alternatively to Stay or Transfer **[Doc. No. 4]**, and brief in support, arguing that an arbitration clause within the 2003 Agreement requires plaintiff to arbitrate the claims asserted in this case. Plaintiff Baran Telecom, Inc. has responded to the motion, objecting to arbitration. Defendants filed a reply brief. Based upon a careful review of the submissions of the parties, the court concludes that defendants' motion should be denied.

Defendants argue that all of plaintiffs' claims in this lawsuit are directly tied to plaintiff's obligation to pay the remaining portion of the $500,000 retention amount under the 2003 Agreement. According to defendants, the arbitration clause contained in the 2003 Agreement requires plaintiff to arbitrate these claims in Connecticut.

The 2003 Agreement contains an "Agreement to Arbitrate" clause, which

provides, in part, the following:

> The parties recognize that disputes may arise between them, and in some instances involving non-parties as well, about **the parties' rights and duties relative to payment of premium and other charges under this Agreement and the policies listed in the Policy Exhibit.** The parties will attempt to resolve those disputes without resort to formal procedures. However, in the event such a dispute is not resolved, either party shall submit the matter to arbitration and the other party shall be bound by such submission, provided that you shall not submit to arbitration any matter seeking to restrict our right to draw upon the Collateral or which would have the effect of restricting our right to draw upon the Collateral. Nor shall either party submit to arbitration any coverage disputes which may arise in connection with claims or suits brought against the policies listed in the Policy Exhibit. . . . The arbitration shall take place in Hartford, Connecticut unless the parties mutually agree to an alternative site.

*See* 2003 Agreement, Doc. No. 5-3, p. 18 (emphasis added).

Despite the fact that the 2003 Agreement contains an arbitration clause, it is well established that arbitration can only be compelled if a valid agreement to arbitrate exists between the parties <u>and</u> the specific dispute at issue falls within the scope of that agreement. Hood Electric, Inc. v. Dodson Construction Company, 2009 WL 960638, *2 (E.D. Okla. April 8, 2009), *citing* Coors Brewing Co. v. Molson Breweries, 51 F.3d 1511, 1515-16 (10th Cir. 1995) (a valid arbitration agreement and a dispute within the scope of that agreement are condition precedents to arbitration); Houlihan v. Offerman & Co., Inc., 31 F.3d 692, 694-95 (8th Cir. 1994) ("Before a party may be compelled to arbitrate under the Federal Arbitration Act, the district court must engage in a limited inquiry to

determine whether a valid agreement to arbitrate exists between the parties and whether the specific dispute falls within the scope of that agreement.").

Here, there is no dispute that the 2003 Agreement contains a valid arbitration clause, and the court need not address this factor any further. However, the parties sharply disagree over whether the specific disputes at issue in this case fall within the scope of the parties' arbitration agreement. The court's limited inquiry in this regard leads the court to conclude that the disputes forming the basis for plaintiff's lawsuit do not fall within the terms of the arbitration clause. Although defendants, particularly in their reply brief [Doc. No. 12, p. 4], have engaged in a somewhat convoluted analysis to arrive at their view that the arbitration clause was intended to apply to plaintiff's "entire insurance program" including "any dispute over monetary 'obligations' between the parties related to a liability claim within that insurance program[,]" the court finds that such an expansive interpretation of the actual words contained in the arbitration clause is not reasonable. The court finds that plaintiff's lawsuit does not clearly or obviously relate to the "payment of premium and other charges" under the 2003 Agreement or other listed policies. The terms used in connection with the $500,000 retention payment, such as "general liability losses," "defense costs," and "indemnity payments" paid on a single claim, do not correspond to language used in the arbitration agreement concerning "payment of premium and other charges." The court has carefully reviewed the issues raised by plaintiff's claims

6

in this lawsuit and determines that they do not fall within the rather limited scope of the arbitration clause. Contrary to the arguments of the defendants, the arbitration clause is not so broad so as to apply to all disputes pertaining to the payment of monies under the 2003 Agreement. The court will not rewrite the terms of a contract or arbitration clause to include more favorable terms than the parties included for themselves. Since this lawsuit is not a dispute relating to the "payment of premium and other charges" the court has no difficulty in concluding that plaintiff's claims in this lawsuit do not fit within the scope of the arbitration clause and are not required to be submitted to arbitration.

Accordingly, defendants' Motion to Dismiss, or Alternatively to Stay or Transfer **[Doc. No. 4]** should be and is hereby **DENIED.**

It is so ordered this 22nd day of March, 2010.

_/s/ Tim Leonard_
TIM LEONARD
United States District Judge